### 75143. SPS INDUSTRIES, INC. v. ATLANTIC STEEL COMPANY.
#### (366 SE2d 410)

McMURRAY, Presiding Judge.

On February 6, 1979, defendant Atlantic Steel Company sent to plaintiff SPS Industries, Inc., a "quotation request" seeking information regarding price, terms and delivery for six (three pairs) cast tooth mill pinions. The pinions were to be manufactured in accordance with defendant's specifications for use in a Blooming mill which defendant operated. Replying to defendant's request, plaintiff submitted a price quotation of $4,795 for each pinion; delivery was proposed to be made in "20-24 weeks." Thereafter, on March 5, 1979, defendant issued to plaintiff a "purchase order" which called for the delivery of six cast tooth mill pinions (at the price quoted by plaintiff) as follows: one pair to be delivered by July 25, 1979; a second pair to be delivered by November 1, 1979; a third pair to be delivered by January 5, 1980. In response to defendant's purchase order, plaintiff sent defendant an "order acknowledgement" which confirmed the delivery dates.

Plaintiff encountered numerous problems manufacturing the pinions and it did not meet the delivery dates. On August 6, 1979, defendant's purchasing agent sent the following letter to plaintiff: "It is imperative that you provide me with the information I requested on the subject orders during our telephone conversation last week. It would appear that the elapse of time since these orders were placed with your company would enable you to respond to delivery requests and to our need for your report on the defective pinions. Your immediate response is expected." Charles J. Wentz, plaintiff's president, deposed that ordinarily such a letter was referred to the appropriate personnel for a response. He did not know, however, whether plaintiff in fact responded to the letter.

Nearly 18 months after the delivery date specified in the contract, on January 14, 1981, plaintiff shipped the first pair of pinions to defendant. By that time, unbeknownst to plaintiff, defendant abandoned the operation of its Blooming mill (it was replaced by a "continuous caster") and it had no use for the pinions.

Several weeks after the delivery of the first pair of pinions, defendant notified plaintiff that it was cancelling the "remaining part" of the order. The cancellation took the form of a "change order" which was sent by defendant to plaintiff on February 16, 1981.

On February 18, 1981, plaintiff mailed a letter to defendant confirming a telephone conversation which took place on the previous day. Therein, plaintiff informed defendant that the charges for the cancellation of the four remaining pinions would be $13,840. In this regard, plaintiff advised defendant that of the four remaining pinions, two had been drawn to specifications and two were "in the as cast

condition." Plaintiff concluded: "Per your telephone instructions all work on this order has been stopped until you advise [plaintiff] if we are to continue to finish these four (4) pinions or are to ship in present condition to your plant." Thereafter, on March 17, 1981, plaintiff sent defendant an invoice which acknowledged defendant's February 16, 1981, change order and set forth cancellation charges of $13,840.

On April 24, 1981, plaintiff received a letter from defendant stating, in pertinent part: "We received delivery of the first pair of . . . pinions on January 14, 1981, nearly 18 months late, and we have yet to receive the second and third pairs of . . . pinions. Thus, neither of the three deliveries meets the corresponding delivery dates which we agreed upon and the pinions . . . are thus not acceptable to us. . . . [Defendant] thereby [sic] rejects the first delivery of . . . pinions and [defendant] also rejects and cancels the two remaining deliveries. As stated in our Change Order dated February 16, 1981, we cancel the remaining two deliveries of the last four pinions . . . and will not accept delivery of these. Due to our rejection of the subject pinions because of late delivery, it is the position of [defendant] that we are not responsible for payment of the first two pinions as detailed in your invoice #1323 dated January 14, 1981, nor for the cancellation charges as detailed in your invoice #1341 dated March 17, 1981."

In view of defendant's refusal to make payment, plaintiff brought this action in the State Court of Fulton County seeking to recover $23,940 (the price of the delivered pinions plus the cancellation charges). Defendant answered the complaint, alleging, inter alia, that plaintiff was not entitled to a recovery because it breached the parties' contract. Additionally, defendant counterclaimed, alleging it incurred damages as a result of plaintiff's purported breach. Following discovery, defendant moved for summary judgment. Its motion was accompanied by a statement of undisputed material facts (in accordance with Rule 6.5 of the Uniform State Court Rules). Paragraphs 6 and 7 of the statement read: "On August 6, 1979, [defendant] sent and [plaintiff] received a letter demanding immediate assurance that the first pair of pinions would be promptly delivered. . . . Plaintiff did not respond to defendant's letter . . ." In Paragraph 11 of the statement, defendant asserted: "On February 6, 1981 [defendant] notified [plaintiff] that it had no use for the pinions and that it did not want them."

Opposing defendant's summary judgment motion, plaintiff submitted the affidavit of Charles J. Wentz, its president. In the affidavit, Wentz deposed that the letter which plaintiff received from defendant on April 24, 1981, was "the first statement of any kind, by [defendant] that it was rejecting delivery of the first two mill pinions . . . [and] the first indication that [defendant] would not pay the can-

cellation charges as detailed in [plaintiff's] prior invoice." Plaintiff did not file a formal response to defendant's statement of undisputed material facts.

Following a hearing upon defendant's summary judgment motion, the trial court entered summary judgment in favor of defendant with regard to the main claim. In pertinent part, the trial court's order read as follows: "The parties contracted in March, 1979 for Plaintiff to deliver six pinions to Defendant, one pair on each of the following dates: July 25, 1979, November 1, 1979, and January 5, 1980. The first pair of pinions was not delivered on July 25, 1979. On August 6, 1979, Defendant demanded in writing assurances of due performance. Plaintiff, by making no response to that request and by not making any delivery until on or after January 14, 1981, approximately 18 months late, repudiated the contract. OCGA § 11-2-609. Delivery of the first pair of pinions was rejected within a reasonable time on February 6, 1981, plaintiff having failed to timely dispute Defendant's statement of undisputed material fact that Defendant notified Plaintiff on February 6, 1981, that Defendant had no use for the pinions and that it did not want them since the mill for which they were ordered had been closed. Moreover, Defendant cancelled the contract and remaining four pinions within a reasonable time."

Plaintiff appeals, asserting the existence of genuine issues of material fact and the inappropriateness of summary judgment. *Held*:

1. Defendant contends it is entitled to summary judgment because plaintiff repudiated the contract as a matter of law. In this regard, defendant argues that it demanded adequate assurance of due performance and that plaintiff failed to respond to the demand, thereby repudiating the contract. We disagree. Viewing the evidence favorably to plaintiff, as we are bound to do, *Blount v. Seckinger Realty Co.*, 167 Ga. App. 778, 779 (307 SE2d 683), we find genuine issues of material fact with respect to the repudiation issue. Specifically, factual questions exist concerning (a) whether defendant had reasonable grounds for insecurity, (b) whether defendant demanded adequate assurance of due performance, (c) whether plaintiff failed to respond to the demand and (d) whether defendant proceeded as if a repudiation never took place.

(a) OCGA § 11-2-609 (1) provides: "A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return." The Code section makes it clear that in order for a party to demand adequate assurance, he must first have "reasonable

grounds for insecurity." As observed in *Cole v. Melvin*, 441 FSupp. 193, 203 (D.S.D. 1977), "the drafters of the code did not intend that one party to a contract can go about demanding security for the performance of the other whenever he gets nervous about a contract. Some reason for the demand for assurance must precede the demand."

"Whether in a specific case a buyer has reasonable grounds for insecurity is a question of fact." *AMF, Inc. v. McDonald's Corp.*, 536 F2d 1167, 1170 (7th Cir. 1976). Do the facts show that defendant had reasonable grounds for insecurity when it sent its letter of August 6, 1979? We think not. "Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards." OCGA § 11-2-609 (2). Reviewing the record, we can find no evidence showing the reasonableness of grounds for insecurity on August 6, 1979, by any objective standard. *Cole v. Melvin*, 441 FSupp. 193, 203, supra. Compare *AMF, Inc. v. McDonald's Corp.*, 536 F2d 1167, 1170, supra.

(b) OCGA § 11-2-609 (1) "clearly requires that when reasonable grounds for insecurity arise, before a party avails himself of the right to suspend his further performance, he must, *in writing demand adequate assurance of due performance* of the other party." *Automated Energy Systems v. Fibers & Fabrics of Ga.*, 164 Ga. App. 772, 774 (298 SE2d 328). See also *Continental Grain Co. v. McFarland*, 29 UCC Rep 512 (4th Cir. 1980). Defendant contends that it made written demand for adequate assurance in its letter of August 6, 1979. Obviously, defendant's letter meets the requirement of a writing. We are not convinced, however, that the letter demanded adequate assurance of performance. It would appear that the letter was nothing more than a request for information. Compare *Automated Energy Systems v. Fibers & Fabrics of Ga.*, 164 Ga. App. 772, 774, supra, with *Cole v. Melvin*, 441 FSupp. 193, 203, supra. At any rate, it cannot be said that the letter constituted a demand for adequate assurance as a matter of law.

(c) OCGA § 11-2-609 (4) provides that "[a]fter receipt of a justified demand failure to provide within a reasonable time not exceeding 30 days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract." The evidence does not demonstrate that plaintiff failed to respond to a justified demand for assurance within a reasonable time. Plaintiff's president deposed that *he did not know* whether plaintiff responded to defendant's letter of August 6, 1979 (the purported justified demand). No contrary evidence was presented on this point. Thus, even if defendant's letter of August 6, 1979, was a justified demand, it cannot be said as a matter of law that plaintiff failed to respond to it.

(d) Where a seller repudiates a contract, the buyer is entitled to

await performance by the seller for a commercially reasonable time or cancel the contract and pursue its remedies under OCGA § 11-2-711. See OCGA § 11-2-610. If instead, however, the buyer proceeds as if a repudiation did not occur, a question arises as to whether an "attempt to cancel had never taken place." *Wahnschaff Corp. v. O. E. Clark Paper &c. Co.*, 166 Ga. App. 242, 244 (304 SE2d 91).

Viewed in favor of plaintiff, the evidence shows that the first pair of pinions was shipped to defendant on January 14, 1981; that on February 16, 1981, defendant notified plaintiff it was cancelling the "remaining part" of the contract and inquired about cancellation charges for the four remaining pinions; and that it was not until April 24, 1981, that defendant rejected the first pair of pinions "because of late delivery . . ." These facts raise a question as to whether defendant considered plaintiff's conduct to be a repudiation of the contract and as to whether defendant cancelled the contract on account of a repudiation. See *Wahnschaff Corp. v. O. E. Clark Paper &c. Co.*, 166 Ga. App. 242, 244, supra.

2. Putting aside the question of repudiation, we must consider whether defendant is entitled to summary judgment because plaintiff did not deliver the pinions on time. Where a seller fails to tender delivery of goods in a timely fashion, the buyer is entitled to reject the goods. OCGA § 11-2-601. However, "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." OCGA § 11-2-602 (1).

Whether a buyer rejected goods within a "reasonable time after their delivery" and seasonably notified the seller of the rejection is ordinarily a question of fact for determination by a jury under all of the facts and circumstances of the case. OCGA § 11-1-204. See *Griffith v. Stovall Tire & Marine*, 174 Ga. App. 137, 139 (329 SE2d 234). In light of evidence that plaintiff was not notified about the rejection of the first pair of pinions until April 24, 1981, we find a genuine issue of material fact as to whether defendant timely rejected delivery of the first pair of pinions and seasonably notified plaintiff of the rejection. *Trailmobile Div. of Pullman v. Jones*, 118 Ga. App. 472, 474, 475 (164 SE2d 346); *Hub Motor Co. v. Zurawski*, 157 Ga. App. 850, 851 (278 SE2d 689).

3. Defendant would have us rule that by failing to respond to defendant's statement of undisputed material facts, plaintiff admitted (1) that defendant's letter of August 6, 1979, constituted a demand for adequate assurance; (2) that plaintiff did not respond to defendant's letter of August 6, 1979; and (3) that notice of the rejection of the pinions was given by defendant to plaintiff on February 6, 1981. We cannot make such a ruling.

Rule 6.5 of the Uniform State Court Rules simply provides: "Upon any motion for summary judgment pursuant to the Georgia

Civil Practice Act, there shall be annexed to the notice of motion a separate, short and concise statement of each theory of recovery and of each of the material facts as to which the moving party contends there is no genuine issue to be tried. The response shall include a separate, short and concise statement of each of the material facts as to which it is contended there exists a genuine issue to be tried." This rule requires that a party opposing a motion for summary judgment submit a response to the moving party's statement of undisputed material facts. It does not, however, require that the respondent "admit or deny" each of the moving party's statements. Nor does it provide that the failure to controvert a statement constitutes an admission that the statement is true. (Compare Federal Local Court Rules, Rule 220-5 (b) (2), N.D. Ga., which provides, in pertinent part: "Response should be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in his statement shall be deemed to have been admitted.") Thus, it cannot be said that by failing to respond to defendant's statement of undisputed material facts, plaintiff admitted the statements therein.

*Mills v. J. E. Sharber Oil Co.*, 181 Ga. App. 81 (351 SE2d 275), cited by defendant, does not stand for the proposition that a party opposing summary judgment admits statements of undisputed material facts by failing to respond to them. In that case, summary judgment was granted by the trial court after the response of the opposing party was stricken for (1) failure to respond to the motion within 30 days; (2) failure to submit a statement of material facts in issue; and (3) failure to submit adequate opposing affidavits. On appeal, this court simply ruled that the trial court did not abuse its discretion when it struck the response of the party opposing the summary judgment motion: "The appellant did not observe Rule 6.5, and we do not consider the trial court's putting teeth in the rule by striking the appellant's response to be an abuse of discretion. That reason alone is sufficient to sustain the trial court's judgment . . ." Id. at 82.

In the case sub judice, the trial court did not strike plaintiff's response to defendant's summary judgment motion. Rather, it awarded summary judgment to defendant on the merits. Accordingly, *Mills v. J. E. Sharber Oil Co.*, 181 Ga. App. 81, supra, is inapposite.

In passing, we observe that Rule 6.5 of the Uniform State Court Rules (and Rule 6.5 of the Uniform Superior Court Rules) was enacted to facilitate the summary judgment decision-making process. It was not designed to be used like a request for admissions, see OCGA § 9-11-36, and it should not be so used.

*Judgment reversed. Sognier, J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED FEBRUARY 26, 1988.

*James T. Perry*, for appellant.
*Walter G. Elliott II*, for appellee.