**Curtis Patrick LANGNER,
Plaintiff–Appellee,**

v.

**Melinda Williams MULL,
Defendant–Appellant.**

No. 89–725.

Court of Appeals of Iowa.

Jan. 25, 1990.

John Bjornstad of Cornwall, Avery, Bjornstad & Scott, Spencer, for defendant-appellant.

Patrick M. Carr of Zenor & Carr, Spencer, for plaintiff-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

DONIELSON, Judge.

Curtis Langner and Melinda Williams Mull are the natural parents of Joshua Williams, born October 22, 1987. Curtis's paternity of Joshua was established by stipulation on February 3, 1988. Curtis has regularly paid child support since that date.

On March 8, 1988, Curtis filed a petition pursuant to Iowa Code section 675.40 seeking visitation with Joshua. Melinda, through her attorney, filed an answer claiming no visitation should be awarded until appropriate home studies were done and the granting of visitation should be carefully supervised by the court.

Melinda's attorney, Mr. Bjornstad, withdrew as her attorney of record in June 1988, and Mr. Bradley Howe entered his appearance on her behalf. Pending resolution of Curtis's action seeking visitation, a stipulated court order entered July 14, 1988, established a visitation schedule for Curtis and Joshua.

On August 8, 1988, Curtis filed an application for rule to show cause. He alleged Melinda denied him visitation with their son in July and she should be found in contempt. Upon joint application by the parties, the hearing on Curtis's contempt action was continued without time and would be rescheduled upon future application by Curtis.

On December 27, 1988, Curtis filed a second application for rule to show cause because Melinda had denied him the opportunity to exercise his visitation rights on December 17, 1988. Hearing on this application was scheduled for January 3, 1989.

A notation in the trial court record reveals Melinda called the clerk of court on December 30, 1988, and stated she had fired her attorney, was going to meet with a new attorney after January 7, 1989, and would be unable to appear on January 3, 1989, for the scheduled contempt hearing. A copy of a December 29, 1988, letter in the record reveals Melinda had in fact dismissed Mr. Howe as her attorney "quite some time ago."

Melinda failed to appear for the contempt hearing on January 3rd nor did anyone appear on her behalf. The court continued the hearing, and it ordered Melinda to appear on January 17, 1989, to show cause why she should not be found in contempt.

On January 4, 1989, Curtis filed a motion for leave to amend his petition to request permanent custody of Joshua. On the same date Curtis filed a motion for expanded visitation pending resolution of the case.

The trial court records reveal Melinda called the court on January 17, 1989, and indicated she would be unable to attend the contempt hearing scheduled for that day. For the second time she did not appear at a scheduled contempt hearing, and no one appeared in her behalf. Following the January 17th hearing, the district court filed an order on January 20, 1989, in which it: 1) sustained Curtis's motion to amend his petition; 2) granted Curtis's motion for expanded visitation; and 3) continued the contempt hearing to the date of the final hearing and trial.

Final hearing on this matter was scheduled for March 8, 1989. A copy of the trial assignment was mailed to Melinda on February 10, 1989. Court records listed her address as "c/o Emmy Simington, Dickens, Iowa 51333." This is the address of Melinda's mother-in-law; Melinda resided at this address. On February 21, 1989, the courthouse received a letter from Ms. Simington. The letter stated: "I'm sorry I opened Mindy's mail by mistake the other week. Mindy [and] her family moved to Texas a month ago." The letter contained the trial assignment which had been mailed to Melinda.

The final hearing was held on March 8, 1989. Melinda did not appear nor did anyone appear in her behalf. Following its review of the file and having heard the testimony of witnesses, the district court ruled Curtis should be granted sole legal custody and full physical care of Joshua. It found Curtis's contempt actions to be moot in light of its custody decision.

Following entry of the court's decision, Curtis hired a private investigator to locate Melinda, and he was reunited with his son. Claiming inadvertence, mistake, or excusable neglect, Melinda filed a motion to set aside the default judgment on April 3, 1989. Following a hearing, the district court denied her motion.

Melinda's appeal in this case presents two separate issues for our review. First, she contends the district court erred in not

setting aside the default judgment entered against her. Her second argument focuses on the merits of the trial court's decision; she contends Joshua should not have been placed in Curtis's care. Our courts have recognized the propriety of reviewing the merits of a defaulting party's case. *In re Marriage of Huston*, 263 N.W.2d 697, 699 (Iowa 1978); *In re Marriage of Olive*, 340 N.W.2d 792, 795 (Iowa App.1983), *overruled on other grounds*, 429 N.W.2d 145, 147 (Iowa 1988). We will first address whether the trial court abused its discretion in not setting aside the default judgment, then we will consider Melinda's challenge to the district court's decision.

■ I. *Default Judgment.* A default may occur when a party fails to be present for trial. Iowa R.Civ.P. 230. Iowa Rule of Civil Procedure 236 sets forth the conditions under which a default judgment may be set aside. A proceeding under rule 236 is at law. *Sher v. Burche*, 353 N.W.2d 859, 862 (Iowa App.1984). The principles governing a motion to set aside a default judgment and our scope of review are well established.

> "A trial court is vested with broad discretion in ruling on a motion to set aside a default judgment. Such a ruling will be reversed on appeal only if this discretion is abused. Generally abuse will be found only where there is a lack of substantial evidence to support the trial court's ruling. We view the evidence in the light most favorable to the trial court's ruling and will uphold the same even where the trial court made no findings of fact or based its ruling upon a different ground. "The burden is upon the movant to show good cause as to one of the grounds stated in rule 236. 'Good cause' for setting aside a default judgment is a sound, effective, truthful reason, something more than an excuse, a plea, an apology, an extenuation or some justification for the resulting effect. The movant must show his failure to defend was not due to his negligence, want of ordinary care or attention, or to his carelessness or inattention. The movant must affirmatively show he intended to defend and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so. By the plain language of rule 236 good cause must be based on (1) mistake, (2) inadvertence, (3) surprise, (4) excusable neglect, or (5) unavoidable casualty."

*In re Marriage of Huston*, 263 N.W.2d 697, 698 (Iowa 1978), *quoting Paige v. City of Chariton*, 252 N.W.2d 433, 437 (Iowa 1977).

The purpose of rule 236 is to allow determination of controversies on their merits rather than on the basis of nonprejudicial inadvertence or mistake. *Whitehorn v. Lovik*, 398 N.W.2d 851, 853 (Iowa 1987). "Because trial on the merits is favored, a liberal approach is to be taken in granting relief from defaults." *First Nat'l Bank in Lenox v. Claiser*, 308 N.W.2d 1, 3 (Iowa 1981).

Melinda argues the default judgment should be set aside because her absence from the March 8, 1989, hearing was caused by the mistake or negligence of her mother-in-law, Ms. Simington. Melinda claims the court-ordered notice mailed to her on February 10, 1989, to inform her of the March 8th hearing never reached her. The Iowa Rules of Civil Procedure provide trial assignment orders may be served by mail. *See* Iowa R.Civ.P. 82(b), 181.2. The notice was sent to Melinda's mother-in-law's address on the 10th, but Melinda, her husband, and Joshua had moved from that residence to Nebraska on February 7, 1989. Melinda claims it was her mother-in-law's conduct in not informing Melinda of her receipt of the notice and in returning the notice to the courthouse which kept her from attending the hearing on March 8th.

■ The district court did not provide specific findings as to why it denied Melinda's motion to set aside the default judgment. However, even without such elaboration, we may affirm the trial court if any proper ground appears in the record. *Hastings v. Espinosa*, 340 N.W.2d 603, 608 (Iowa App.1983). From our review of the record, it appears two possible bases exist for the trial court's refusal to set aside the default judgment. It could have found Me-

linda's absence from the hearing was due to her own unexcused negligence or her absence was due to her own deliberate attempt to escape the court's jurisdiction. In either case the trial court did not err in refusing to set aside the default judgment.

With regard to Melinda's negligence in this matter, we note that she knew she was leaving the state while court actions were pending regarding the issues of visitation, custody, and contempt, yet she failed to inform the court, Curtis, or Curtis's attorney of her new address where she could be reached. In a letter Melinda wrote to Curtis's attorney, dated February 2, 1989, she was clearly aware she would be leaving the state, yet she never bothered to provide a forwarding address. Melinda was aware she was acting pro se in the court proceedings and twice before she had evidenced an ability to contact the court and inform it of her status with regard to specific proceedings (she called the court on December 30, 1988, and January 17, 1989, to inform it of her absence from contempt hearings), yet she chose not to contact the court to update the address it had listed for her on its records.

Melinda's testimony reveals she and her husband did not bother to inform her mother-in-law of their new address until the end of February or the first of March. Melinda's delay in informing her mother-in-law of her new address may account for Ms. Simington's failure to forward the notice to her. In another context, this court has recognized the failure to provide a forwarding address for the transmission of notices will not suffice to set aside a default judgment. *Easton v. Crystal River Resources, Inc.*, 360 N.W.2d 138, 139 (Iowa App.1984).

■ In her brief Melinda claims the record shows she intended to present a defense in this action and that should have been considered in determining whether to set aside the default judgment. A mere assertion of intent to defend without evidence of actual efforts exerted in support thereof will defeat efforts to set aside a default judgment. *See Huston*, 263 N.W.2d at 699. The record in this case reveals Melinda missed court hearings scheduled in December and January and she failed to file any responses to Curtis's motions to enlarge visitation and to amend his petition to seek custody. Furthermore, Melinda failed to notify the court of her new residence so she could continue to receive copies of court notices and filings. No evidence exists to find Melinda actually exerted any effort to defend herself in this matter.

It is clear it was Melinda's own negligence and mistakes which prevented her from receiving the court's mailed notice and appearing at the hearing. The circumstances in this case do not warrant a finding that Melinda's mistakes or negligence were somehow excusable. The trial court would not have erred in refusing to set aside the default judgment based on Melinda's negligence or mistake.

A review of the evidence in this case reveals the most likely basis for the trial court's refusal to set aside the default judgment was its belief that Melinda's conduct was calculated to avoid her presence before the court. A number of factors point toward the conclusion that Melinda was deliberately trying to avoid a hearing on the merits of this case. She had a history of denying visitation to Curtis, and she had missed two contempt hearings with regard to her conduct. Testimony by Curtis and Mr. Stoermer revealed Melinda had made statements in December 1988 indicating Curtis would never see his son again.

In a letter dated February 2, 1989, Melinda wrote Curtis's attorney that she did not wish for Curtis to see Joshua any longer and she, her husband, and Joshua would be moving to a southern state and starting a new life. Melinda's mother-in-law delivered this letter to Curtis's attorney. She attached a note to the letter which said, "I was suppose [sic] to mail this for Mindy [and] put it up [and] forgot it. Sorry. They moved south about a month ago." When Melinda's mother-in-law returned the trial assignment notice to the court, she wrote Melinda had moved to Texas. Anne Becker testified at the hearing to set aside the default judgment that she overheard a conversation Melinda had in early February

with a friend. Ms. Baker testified, "She [Melinda] made the comment that they were going to be going to Nebraska but if anyone asked that they were going to go to Texas."

All of these factors point to the conclusion that Melinda, who had previously denied Curtis many of his court-ordered visits and was upset about the expanded visitation granted Curtis on January 20th, deliberately chose to remove herself and her son from the state, and she fully intended not to disclose her whereabouts and in fact planned to mislead Curtis and his attorney into believing she had taken up residence in a southern state.

Good cause for setting aside a default judgment has never encompassed one's intentional conduct to conceal her whereabouts and avoid court proceedings. Melinda clearly did not meet her burden for setting aside the default judgment in this case.

■ II. *Custody.* In addressing Melinda's claim that custody should not have been placed with Curtis, we note our de novo review of a default judgment will generally be limited to (1) the scope of relief granted, and (2) the equities of the decree as determined by an examination of the entire record made at trial. *See Huston*, 263 N.W.2d at 700 (review of default decree in dissolution action); *Olive*, 340 N.W.2d at 795 (review of default decree modifying child support and visitation provisions). We examine the trial court's decision for its basic fairness in light of the total record made at trial. *Huston*, 263 N.W.2d at 700. Of course, as this action involves the custody of a child, our first and governing consideration is the best interests of the child. *Heyer v. Peterson*, 307 N.W.2d 1, 7 (Iowa 1981); Iowa R.App.P. 14(f)(15). The criteria for determining custody are the same whether the parents are dissolving their marriage or are unwed. *Heyer*, 307 N.W.2d at 7. In establishing custody, we are guided by the criteria delineated in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *Id.*

■ The thrust of Melinda's arguments is the district court should not have placed custody with Curtis because it did not have the benefit of her presence and testimony at trial. Melinda's absence was her own fault. She cannot now complain that the record was inadequate.

■ The record in this case strongly supports the trial court's placement of custody with Curtis. The record reveals a home study was completed on the Langner home, and from it it may be adduced Curtis would be a suitable custodian for Joshua and he could provide an excellent home for him. It was also apparent Curtis had a supportive family willing to assist him in caring for Joshua.

With regard to Melinda, the record was replete with evidence of her refusal to cooperate with Curtis in ensuring he was able to exercise his visitation rights. A court may consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, to be a significant factor in determining the proper custody arrangement. Iowa Code § 598.41(1) (1989).

■ Furthermore, the record revealed Melinda's husband, Derek Mull, has a propensity for criminal behavior and violence. Officer Bartlett testified that since 1978 Derek Mull had accumulated forty-one criminal charges in the city of Spencer, Iowa. These charges included thefts, criminal trespass, assaults, interference with official acts, contempt of court, tampering with a motor vehicle, driving while under suspension, and public intoxication. In addition to these arrests, Officer Bartlett testified he had been at the Mull residence on numerous occasions based on complaints of domestic abuse Mull inflicted on his wife, Melinda. Mull was previously convicted for assaulting a woman with whom he lived; that woman was eight months pregnant at the time of the assault.

As the trial court found, residing with Derek Mull would not be an appropriate environment for a child. The best interests

of Joshua warrant placement with his father.[1]

AFFIRMED.

SCHLEGEL, J., concurs.

OXBERGER, C.J., dissents.

SACKETT, J., takes no part.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent. I concur in the majority's holding that the appellant was in default. I disagree she was in default of a hearing regarding child custody.

The petition filed on March 8, 1988, concerns visitation. It does not request a change in child custody. On July 14, 1988, the trial court entered a stipulated order continuing the matter to be scheduled later. The order also provided for a home study of the father's home to determine "whether visitation is in the best interest of the said child." The order does not expand the visitation issue to one of custody of the child.

On August 8, 1988, the father filed an application for rule to show cause. On August 15, 1988, the court, upon joint application of the parties, continued the hearing on rule to show cause without time to be reset upon the application of the father.

On December 27, 1988, the father filed another application to show cause. This application did not seek a change in child custody.

On January 3, 1989, the court entered an order setting a hearing on the contempt action. It did not say anything about a change in child custody.

On January 4, 1989, the father filed a motion to amend his petition to request for the first time a change in child custody.

On January 17, 1989, the court ordered: The court sustains the motion for leave to amend and orders the pleadings, without further filing or service, amended in conformity with the amendment filed by the plaintiff on January 4, 1989.

On March 8, 1989, the court declared the appellant mother in default and granted the father full custody of the minor child.

In my judgment the mother was not given due notice of the hearing on custody. She was in default on the contempt action. However, she did not receive due process notice of the change of the action. She did not receive proper notice of the child custody claim.

I would hold the court is without jurisdiction to hear the child custody action until the appellant is properly served with a notice of the child custody claim.

---

1. We concur with the trial court's conclusion that even if this action were to be subjected to a "substantial change in circumstances" analysis, Melinda's denial of visitation to Curtis and her subsequent marriage to Derek Mull constitute a sufficient change in circumstances to warrant a change in custody in this case.