**S & S, INC. d/b/a Star Grain Company, Appellant,**

v.

**Ernie MEYER, Appellee.**

**S & S, INC. d/b/a Star Grain Company, Appellant,**

v.

**Mike MEYER, Appellee.**

**S & S, INC. d/b/a Star Grain Company, Appellant,**

v.

**Ralph PLAMBECK, Appellee.**

No. 90–1339.

Court of Appeals of Iowa.

Oct. 29, 1991.

Chip Lowe of Adams, Howe & Zoss, P.C., Des Moines, for appellant.

J.E. Tobey III, Davenport, and C. Roger Fair and Robert C. Meyer of McFerren, Fair & Meyer, Davenport, for appellees.

Heard by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

HABHAB, Judge.

The facts giving rise to this litigation are largely undisputed. Star Grain had been an Iowa licensed grain dealer. It subsequently lost its license after its principal officers and owners were indicted by an Illinois federal grand jury for defrauding customers and defaulting on certain checks. The defendants (sellers of grain) are all farmers. They had, prior to July 1, 1988, entered into contracts for the future delivery of corn and beans. These contracts were in various amounts for certain specified prices in October and November 1988.

On July 1, 1988, the Iowa Department of Agriculture and Land Stewardship suspended Star Grain's license. Star Grain then sought Chapter 11 bankruptcy. The defendants objected to Star Grain's attempt to have the bankruptcy court enforce their contracts as a debtor in possession. They objected as this arrangement would

allow Star Grain to deal in grain without a valid license.

There was testimony the litigants agreed to voluntarily dismiss the bankruptcy case. The parties allegedly agreed the State of Iowa would not insist on a Chapter 7 proceeding. In return, Star Grain would file a declaratory judgment action testing the enforceability of the grain contracts. This declaratory judgment action apparently was never filed.

On October 7, 1988, Star Grain assigned its contracts for future grain delivery to a licensed grain dealer, Duffe Grain, Inc. Star Grain's agreement with Duffe provided Duffe would receive thirty percent of any profit made. At the time, the price for corn had risen above the contract prices. This rise was due in part to the 1988 drought.

On October 7, 1988, Duffe Grain sent notices to the grain producers. The notice provided:

> This will notify you of the fact that your grain contract(s) have been assigned to Duffe Grain Inc. by Star Grain. This assignment has been accepted by Duffe Grain Inc. as an accommodation to Star Grain, due to Star Grain's current inability to directly complete your contract(s). You are to begin shipment as per instructions from Duffe Grain as to which terminal or processor grain facility to deliver. Please telephone at this number 319-649-3311, Ron Duffe.
>
> Settlement will be finalized by Duffe Grain Inc. at your original contracted price as indicated below. October and November contracts are now being accepted. Upon delivery, the scale tickets should be made out to the account of Duffe Grain Inc., Atalissa, Iowa with your name on the ticket.
>
> Please understand that Duffe Grain Inc. has no interest direct or indirectly in Star Grain Co. whatsoever; Duffe Grain is making this accommodation for the benefit of you.

Several farmers who had their contracts assigned contacted Duffe and ultimately delivered their grain. However, the three farmers here, the sellers, never telephoned Ron Duffe to receive additional instructions. On October 25, 1988, an administrative law judge permanently revoked Star Grain's license.

Before the end of November 1988, Duffe reassigned defendants' respective contracts to Star Grain. The sellers failed to fulfill the contracts, but instead sold their grain at other times and places.

Star Grain instituted a separate lawsuit against each seller. The three suits were consolidated and tried to the district court sitting without a jury. The court held the letter of notification sent by Duffe Grain on October 7, 1988, was calculated to lull the sellers. The court believed Duffe's notice was not designed to obtain delivery of the grain. Rather, the trial court found Star Grain wanted to translate a contract which it could not perform into a suit for damages against the unsuspecting sellers. The court held the sellers were under no duty to contact Duffe Grain to ascertain where delivery should be made. The court concluded Star Grain is not entitled to recovery against any seller.

For its appeal, Star Grain contends the district court erred in finding the assignment between Star Grain and Duffe Grain was not made in good faith. It argues Duffe Grain, as assignee, did give timely notice of the assignment and made a proper demand for delivery which the sellers were required to honor. It suggests the only reason the contracts were not honored is because the price of grain had risen on the open market and the sellers could obtain a better price elsewhere. Star Grain claims the court erred in not finding valid enforceable contracts had been breached.

I. *Standard of Review.*

■ Findings of facts in a law action have the effect of a special jury verdict and are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We construe the trial court's findings broadly and liberally. *Grinnell Mut. Reinsurance Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988). In case of doubt or ambiguity we construe the findings to uphold, rather than defeat, the trial court's judgment. *Id.*

We are prohibited from weighing the evidence or the credibility of the witnesses. *Id.*

A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. In evaluating sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider evidence favorable to the judgment, whether or not it was contradicted.

*Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978).

Evidence is substantial or sufficient when a reasonable mind would accept it as adequate to reach the same findings. *Waukon Auto v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 846 (Iowa 1989). Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell Mut. Reinsurance Co.*, 431 N.W.2d at 785.

■ If we reach the same result as the trial court, but for different reasons, we will affirm. *Anderson v. Yearous*, 249 N.W.2d 855, 863 (Iowa 1977). We may affirm for any proper ground for which support is found in the record. *Langner v. Mull*, 453 N.W.2d 644, 647 (Iowa App. 1990). With these principles in mind, we turn to the issues raised on appeal.

The critical question is whether the trial court's decision refusing to enforce the contracts is supported by substantial evidence. We determine it is. We affirm.

II. *Enforceability of the Contracts.*

Initially, we face the question whether the grain contracts remained enforceable after July 1, 1988. On that date the Iowa Department of Agriculture and Land Stewardship suspended Star Grain's grain dealer's license.

A. *Legal Framework.*

Grain dealing is a regulated business in Iowa. With certain defined exceptions, all grain dealers in Iowa are required to be licensed. Iowa Code § 542.3. Dealers are required to show financial solvency or post bond. *Id.* Financial records may be inspected at any time. Iowa Code § 542.9. The dealer's license may be revoked or suspended after proper procedures for violation of a rule or regulation. Iowa Code § 542.10.

We are unable to find nor have we been directed to any provision in the Iowa Code or the Iowa Administrative Code dealing with the enforceability of grain contracts made before a licensure suspension. *See* Iowa Code ch. 542, 542A, 543, 543A; Iowa Admin.Code ch. 91. It is agreed the Grain Warehouse Division of the Iowa Department of Agriculture and Land Stewardship regulates grain dealers. The Bureau Chief of that division testified at trial:

[BUREAU CHIEF]: Simple purchase contracts [like those involved in this case], Your Honor, is just an arrangement where the producer is going to sell grain to a grain dealer at a certain date. Until they deliver on that grain, we have no say.

THE COURT: ... Oh, until the grain is delivered?

[BUREAU CHIEF]: That is correct.

THE COURT: That's where you step in?

[BUREAU CHIEF]: That's where we step in.

Therefore, we look to other statutes and the common law to decide the issues before us.

■ Sales of grain, such as those in the present case, are governed by article 2 of the Iowa Uniform Commercial Code, Iowa Code ch. 554 (UCC). *Nora Springs Co-op Co. v. Brandau*, 247 N.W.2d 744, 747, 20 U.C.C.Rptr. 909, 913 (Iowa 1976). Unless displaced by the UCC, other statutes and the common law supplement its provisions. *Id.*, 247 N.W.2d at 749, 20 U.C.C.Rptr. at 915; Iowa Code § 554.1103. Contracts such as those involved here are generally freely assignable, subject to the strictures of the UCC. Iowa Code ch. 539.

As it relates to the UCC, we have searched the pleadings and are unable to find reliance on the provisions thereof by the plaintiff. When we review the appellant's brief, particularly under the "Issue

Presented for Review," our attention is not directed to error predicated on the lack of compliance of any section of that Code. The plaintiff's approach appears to rest solely on breach of a written contract. Insofar as possible, we will resolve the problem before us in the manner submitted to the trial court, bearing in mind that we may affirm the trial court for any reason found in the record.

### B. *Continuing Validity of Contracts.*

■ No one argues the contracts are facially invalid, overbearing, or fraudulent. All parties appear to agree the contracts were acceptable and valid when made. We thus accept this general assumption when examining these transactions.

One theory for holding the contracts unenforceable is the suspension itself cut off the contract. One might argue that because the buyer cannot legally perform the contract at the present time, the contract itself is illegal, and therefore void. *See* C.J.S. *Licenses* §§ 2(a), 74 (1987); *see also Keith Furnace Co. v. MacVicar*, 225 Iowa 246, 280 N.W. 496 (Iowa 1938).

However, this theory ignores certain factors. The contracts are executory. Performance was not due until some months in the future. In the meantime, the license may be reinstated. Or, as happened in this case, the contracts may be assigned to a validly licensed Iowa grain dealer. *See* Iowa Code ch. 539.

No statutory or case law has been cited showing where any jurisdiction has decided this question. In the absence of legal authority to the contrary, we determine it is unreasonable to void a contract which was valid at its inception and may be valid at time of performance. As these are executory contracts, we prefer to await the time for performance to determine their validity.

### III. *Applying the UCC.*

As noted earlier, the trial court did not discuss the effect of the UCC on these proceedings, nor does the plaintiff plead any of the essential sections. The defendant does raise certain of these sections as part of their affirmative defense.

Be that as it may, we conclude certain provisions of the UCC are applicable. These provisions provide the basis for our affirmance of the trial court's ruling. In this respect, we may affirm the trial court for any reason found in the record. *See Anderson*, 249 N.W.2d at 863; *Langner*, 453 N.W.2d at 647.

### A. *Change in Delivery.*

■ The contracts at issue each stated the place of delivery of the grain. However, the notice of assignment changed the delivery instructions. It provided the sellers were to call Duffe Grain. Duffe Grain would then designate the place of delivery.

The UCC deals with this situation. Iowa Code section 554.2614(1) provides:

1. Where *without fault of either party* the agreed berthing, loading, or unloading facilities fail or an agreed type of carrier becomes unavailable or the agreed manner of delivery otherwise becomes commercially impracticable but a commercially reasonable substitute is available, such substitute performance must be tendered and accepted. (Emphasis added.)

■ This section speaks for itself. If the change in the manner or place of delivery is a commercially reasonable substitute, such performance must be tendered and accepted. The change in mode of delivery from a stated place to a telephone call arranging the place of delivery may be commercially reasonable. However, the change must be "without fault of either party." *Id.* This language is critical to the application of this section.

In the present case the trial court clearly found the buyer, Star Grain, to be at fault. Star Grain's machinations and manipulations brought about the twenty-four hour "pay-up" order of the Iowa Grain Warehouse Division, its own resulting financial insolvency, its filing for bankruptcy protection, the felony conviction of at least one of its principals for grain fraud, and the suspension and eventual revocation of its Iowa grain dealer's license. These factors in turn necessitated Star Grain's assignment

of its 1988 fall contracts. It was the notice of assignment which changed the terms of delivery.

We determine substantial evidence supports the trial court's finding that Star Grain is at fault in the changing of the terms of delivery. Under section 554.-2614(1), this amounts to an anticipatory breach of the contracts. We conclude there is substantial evidence to support the finding by the trial court that the sellers were entitled to treat their contracts as breached. They thus were free to pursue their remedies outlined in section 554.2610 for anticipatory repudiation. We affirm on this issue.

B. *Insecurity of Seller.*

■ Although our discussion in the preceding section of this opinion is dispositive, we determine another section of the UCC may be applicable in this case. Our consideration is premised on the fact that the sellers considered themselves insecure as to the contracts' enforceability and Star Grain's future ability to perform. We determine their insecurity is adequately justified by the record. Star Grain had filed for bankruptcy. It was actually insolvent for a short time. Certain of its checks were returned because of insufficient funds.[1]

This short term insolvency was apparently due to the Department of Agriculture's order to Star Grain to pay off its debts within twenty-four hours. The principals of Star Grain were under indictment in federal court in Illinois. They were eventually convicted of some species of grain fraud. Questions arose concerning the continuing enforceability of the contracts and Star Grain's legal capacity to perform with its license suspended. We conclude a reasonable trier of fact could find from this record the sellers would have been justified in deeming themselves insecure.

Being justifiably insecure, the sellers had a right to assurance that future perform-

ance by Star Grain was not only possible, but secure. The sellers now had to deal with this insecurity without being liable for breach of contract. If they simply treated the insecurity as an anticipatory repudiation, the sellers could be liable for breach if in fact Star Grain was able to perform at the time set for execution.

The UCC provides a method for dealing with this type of situation:

1. A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until that party receives such assurance may if commercially reasonable suspend any performance for which that party has not already received the agreed return.

2. Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

3. Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.

4. After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

Iowa Code § 554.2609.

■ This section requires the demand for assurances be in writing. *See SPS Industries, Inc. v. Atlantic Steel Co.*, 186 Ga.App. 94, 96–98, 366 S.E.2d 410, 413–14, 6 U.C.C.Rptr.2d 122, 126 (1988); *USX Corp. v. Union Pacific Resources Co.*, 753 S.W.2d 845, 852–53, 7 U.C.C.Rptr.2d 100,

---

1. There is testimony in the record that the defendant Plambeck was concerned about payment for corn and beans that he sold to Star Grain. When he confronted an employee of Star Grain as to the financial problem of Star Grain, he was encouraged to come in right away for payment. When he was given his check, the employee urged him to clear the check as fast as possible because "I'm [the employee of the grain company] afraid there is not going to be enough to go around; how bad this is going to get I don't know."

110 (Tex.App.1988); *Scott v. Crown,* 765 P.2d 1043, 1046, 7 U.C.C.Rptr.2d 464, 467 (Colo.App.1988); *Teeman v. Jurek,* 312 Minn. 292, 297, 251 N.W.2d 698, 701, 21 U.C.C.Rptr. 506, 510 (1977); R. Anderson, 4 *Uniform Commercial Code* § 2–609:10 at 218 (3rd ed. 1983). Absent attenuating circumstances, this written demand is required before the demanding party may proceed with remedies for anticipatory breach under UCC 2–610 (Iowa Code § 554.2610). *See, e.g., Scott,* 765 P.2d at 1046, 7 U.C.C.Rptr.2d at 468–69; *Teeman,* 312 Minn. at 297, 251 N.W.2d at 701, 21 U.C.C.Rptr. at 510.

The appellant does not assign as error the question of whether the demand for assurances, if any, complied with the provision of the law. Thus, we do not reach that question in this appeal. We do note, without necessarily deciding, that if the buyer's conduct is sufficiently egregious to substantially impair the value of the contract, a written demand for assurances may not be necessary. We quote from a Connecticut Supreme Court case:

> But if the buyer's conduct *is sufficiently egregious,* such conduct will, in and of itself, constitute substantial impairment of the value of the whole contract and a present breach of the contract as a whole [dispensing with the need to make a written demand for assurances].

*Cherwell–Ralli, Inc. v. Rytman Grain Co., Inc.,* 180 Conn. 714, 718–20, 433 A.2d 984, 987, 29 U.C.C.Rptr. 513, 517 (1980) (emphasis added).

The aforesaid quote is essentially the doctrine of anticipatory repudiation or anticipatory breach. *See* Iowa Code §§ 554.-2610, .2701, .2702, .2703, .2711, .2712, .2713. In such cases the regular legal and common law remedies, as well as those of the UCC, remain open to the non-breaching party. Iowa Code § 554.2701.

 Whether the demanding party has reasonable grounds for insecurity is a question for the trier of fact. *See AMF, Inc. v. McDonald's Corp.,* 536 F.2d 1167, 1170, 19 U.C.C.Rptr. 801, 806 (7 Cir.1976); *SPS Industries, Inc.,* 186 Ga.App. at 96–97, 366 S.E.2d at 413; 6 U.C.C.Rptr.2d at 126–27; *Scott,* 765 P.2d at 1046, 7 U.C.C.Rptr. at 467. Likewise, whether the demand is adequate to put the other party on notice of the need for adequate assurances is also a question of fact. *USX Corp.,* 753 S.W.2d at 853, 7 U.C.C.Rptr.2d at 112; *see, e.g., Scott,* 765 P.2d at 1046–47, 7 U.C.C.Rptr. at 468–69.

 The adequacy of the assurance is likewise a question of fact. *American Bronze Corp. v. Streamway Products,* 8 Ohio App.3d 223, 456 N.E.2d 1295, 1303, 37 U.C.C.Rptr. 687, 695 (1982); *see* Anderson, 4 *Uniform Commercial Code* § 2–609:1, Official Comment 4 at 212–13. Whether a breach occurred justifying the sellers' cancellation is a fact question. *See, e.g., Nora Springs Co-op Co.,* 247 N.W.2d at 749, 20 U.C.C.Rptr. at 915–16. All the factors are to be evaluated according to the standard of commercial reasonableness under the particular circumstances of the case. *See* Iowa Code § 554.2609(1), (2), and (4); Anderson, 4 *Uniform Commercial Code* § 2–609:1, Official Comment 1–6 at 211–14; *see, e.g., American Bronze Corp.,* 8 Ohio App.3d 223, 456 N.E.2d at 1303, 37 U.C.C.Rptr.2d at 695.

As stated earlier we construe the trial court's findings broadly and liberally. In case of doubt, we construe the findings to uphold rather tham defeat the trial court's judgement. We find substantial evidence to support the findings of the trial court on the issues assigned to us as error.

### IV. *Conclusion.*

We accordingly affirm the trial court on all issues. Any other issues not discussed in detail are either covered by our opinion or are without merit.

Costs of this appeal taxed to Star Grain.

AFFIRMED.