# IN THE COURT OF APPEALS OF IOWA

No. 15-1119
Filed April 6, 2016

IN RE THE MARRIAGE OF MAGALY DURAN
AND PABLO DURAN

Upon the Petition of
**MAGALY DURAN,**
Petitioner-Appellee,

**And Concerning**
**PABLO DURAN,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Wright County, Christopher C. Foy,

Judge.

A father appeals a default dissolution decree. **AFFIRMED.**

William T. Talbot of Newbrough Law Firm, L.L.P., Ames, for appellant.

Alyssa A. Kenville of Alyssa Kenville, P.C., Fort Dodge, for appellee, until

withdrawal, and Magaly Duran, Clarion, appellee pro se.

Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

A father appeals a default dissolution decree. He contends the district court should not have (1) found him in default, (2) granted sole custody of the parties' children to their mother, (3) awarded child support in excess of the guideline amount, and (4) granted the mother a large property settlement.

## I. *Background Facts and Proceedings*

Pablo and Magaly Duran married in 1990. They had three children, one of whom was an adult at the time of trial. Magaly petitioned for a divorce in 2013. At the time, Pablo was living in Ohio. Magaly lived in Iowa with the two minor children.

Pablo retained an Iowa attorney, who filed an answer on his behalf. Pablo initially objected to the Iowa court's exercise of jurisdiction but later withdrew his objection and consented to jurisdiction in this state. He stipulated to temporary matters, including Magaly's exercise of temporary physical care over the children and his payment of temporary child support in the amount of $1150 per week.

Before trial, Pablo's attorney was allowed to withdraw based on difficulty communicating with her client. Pablo did not appear for trial nor did he retain new counsel to appear on his behalf. The court found Pablo to be in default. After considering Magaly's evidence, the court dissolved the marriage, granted Magaly sole legal custody of the minor children, ordered Pablo to pay $4983.33 per month in child support, and awarded Magaly property, including two Iowa homes valued at $88,000 and $95,000, two vehicles valued at $11,000, and a $500,000 cash settlement. Pablo appealed.

## II. Standard of Review

Generally, "[o]ur review in dissolution cases is de novo." Iowa R. App. P. 6.907; *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005). The standard is different where a party is in default. *See* Iowa R. Civ. P. 1.971(3) (stating a party is in "default" if the party "[f]ails to be present for trial").

When "a defaulting party to a dissolution proceeding . . . seek[s] appellate review on the merits . . . our de novo review will generally be limited to (1) scope of relief granted, and (2) equities of the decree as determined by an examination of the entire record made at trial." *In re Marriage of Huston*, 263 N.W.2d 697, 700 (Iowa 1978). In an action involving child custody "our first and governing consideration is the best interest of the child." *Langner v. Mull*, 453 N.W.2d 644, 649 (Iowa Ct. App. 1990).

## III. Analysis

### A. Default

Pablo contends the district court should not have found him in default. Specifically, he asserts, he "did not know his attorney had withdrawn [and] did not receive notice of trial date, or any other notices subsequent to April 3, 2015." In his view, his "failure to receive notice is alone sufficient reason to set aside the oppressive terms of the Decree of Dissolution." On our de novo review, we cannot find an absence of notice.

After Magaly filed the dissolution petition in October 2013, Pablo retained counsel who zealously represented him until two months before the scheduled trial date in June 2015. During that period, the attorney agreed to postpone the

initial trial date and, on December 31, 2014, was notified of the rescheduled June 2015 trial date. This notification was transmitted to counsel more than three months before she filed her motion to withdraw. At the time of the notification and for the ensuing two months, counsel was still actively communicating with Pablo, as reflected in her court filings. For example, she informed the court Pablo had responded to discovery and wished to participate in a hearing by telephone rather than in person because he was living in Ohio.

Trial took place as rescheduled. Pablo did not appear despite his attorney's receipt of the trial notice five months earlier and clear evidence of his ongoing communication with her. We conclude the district court's finding that Pablo was in default is supported by the record.

### B. Legal Custody

As noted, the district court granted Magaly sole legal custody of the children. Legal custody includes "decision making affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.1(5) (2015). The court's disposition was within the scope of relief requested by Magaly in her petition.[1] The disposition was also equitable.

---

[1] Magaly's prayer for relief included a request for "sole legal custody and primary physical care" and the body of her petition alleged: "It is in the best interest of the minor children to be placed in the sole legal custody and primary physical care of the Petitioner subject to Respondent's visitation as determined by the Court." *Cf. Heyer v. Peterson,* 307 N.W.2d 1, 5 (Iowa 1981) (noting lack of reference to custody in general prayer for relief and noting request failed to "fairly conform to the case made by the pleadings and the proof").

Pablo had limited contact with the minor children after he moved to Ohio in 2011, with the exception of a few months in 2013 when Magaly also moved to Ohio. *See id.* § 598.41(3)(h) (listing the "geographic proximity of the parents" as a consideration in what custody arrangement is in the best interest of the minor child). In the five months preceding the dissolution trial, he had no personal contact with the children.

Throughout the children's lives, Magaly served as their primary, if not sole, caretaker. She made all the decisions involving them. *See id.* § 598.41(3)(d) (listing "[w]hether both parents have actively cared for the child before and since the separation"); *In re Fernander*, No. 11-1972, 2012 WL 3026401, at *2 (Iowa Ct. App. July 25, 2012) (affirming the mother's sole legal custody where "[t]he children, who were ages sixteen and fourteen at the time of the hearing, had been in [the mother's] care since they were born, with very little input from [the father. The father] has practically no personal knowledge of what is in the best interest of these children. It would be impossible for him to make informed decisions that a custodial parent must make").

Magaly also testified Pablo had recently left the country and was living in Mexico. She expressed fear that, if joint custody were awarded, he might try to take the children to Mexico.

Based on these circumstances, we conclude the district court appropriately granted Magaly sole custody of the children.

*C.    Child Support*

Pablo contends "the district court erred in its calculation of child support." In his view, the order was based on "mere speculation." We disagree.

There is "a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded." Iowa R. Civ. P. 9.4. A variance from the amount prescribed by the guidelines is permissible as long as the court makes "a written finding that the guidelines would be unjust or inappropriate" under specified criteria. Iowa R. Civ. P. 9.11; *accord* Iowa R. Civ. P. 9.13 ("If a variance from the guidelines is proposed, the court must determine whether it is justified and appropriate, and, if so, include the stated reasons for the variance.").

The child support ordered by the district court was within the scope of relief Magaly requested in her petition. In addition, the award was equitable. The district court could not impose the guideline amount of child support because Pablo was the sole wage earner, the record contained limited information about his sources of income, and the only income figure in the record appeared to be inaccurate.

Given the paucity of financial information, the district court premised the award on Pablo's stipulation to pay weekly temporary support of $1150 and his payment of this amount until three months before trial. The court determined his voluntary agreement to pay this amount, which equaled $4983.33 per month, meant that his income had to be greater than the $108,000 annual income figure

he reported on one of the parties' joint tax returns. The court concluded, "Because the Court has no information regarding [Pablo's] current income, it is appropriate to continue the child support obligation previously stipulated to by [Pablo]." *See* Iowa R. Civ. P. 9.13 (allowing a party to stipulate to child support, but requiring the stipulation to "be reviewed by the court to determine if the amount stipulated . . . [is] in substantial compliance with the guidelines").

The court's determination was supported by Magaly's testimony that Pablo engaged in large cash transactions. *See In re Marriage of Claar*, No. 05-0174, 2006 WL 334219, at *3 (Iowa Ct. App. Feb. 15, 2006) (concluding where the husband "failed to file a child support guideline worksheet" and spouse testified reported income did not include many cash transactions, the district court "did not have sufficient information to accurately calculate [husband's] current income, [and] . . . a child support review hearing [would] be held [later]"). Pablo could have but did not refute this testimony. Because his non-participation was the reason the court lacked sufficient information to calculate child support under the guidelines, he should not be heard to complain when the court imposed the temporary amount to which he stipulated. *See Huston*, 263 N.W.2d at 700 ("Although [the father] criticizes the trial court's reliance upon [his income as represented by the mother], it was obviously all on which the judge could depend. . . . [A]ny obscurity regarding [his] income can only be attributed to his trial court dereliction."); *Langner*, 453 N.W.2d at 649 ("Melinda's absence was her own fault. She cannot now complain that the record was inadequate."). We affirm the district court's child support award.

### D.    Property Allocation

Pablo contends the "district court erred in its allocation of property settlement." In his view, the division is not supported by substantial evidence. Because Pablo was in default he is precluded from arguing the property division was unsupported by substantial evidence. *See Thomson v. Brown*, No. 11-0387, 2012 WL 300327, at *2 (Iowa Ct. App. Feb. 1, 2012) ("Given the entry of a default judgment, [appellant] is precluded from arguing the sufficiency of the facts on appeal."). We turn to the equities of the decree.

The parties were married for twenty-five years. During that period, Magaly testified they accumulated a number of assets, including two homes in Iowa and two homes in Mexico. In the absence of evidence to the contrary, the district court accepted Magaly's valuation of this property. The court awarded Pablo the two homes in Mexico and all the interest in his two businesses, with an equalizing cash payment to Magaly of $500,000. This payment was consistent with the valuation evidence. We conclude the court's property settlement was equitable. *See In re Marriage of Hanson*, 475 N.W.2d 660, 663 (Iowa Ct. App. 1991) ("Since it is apparent it was [the husband's] machinations and deviousness which created the very problem he complains of, he may not now assert the trial court's ruling is inequitable.").

We affirm the challenged provisions of the dissolution decree. Costs of this matter are assessed to Pablo.

**AFFIRMED.**