In re COAST TRADING COMPANY, INC., Debtors.

Wolfkill Feed and Fertilizer, Creditor.

Bankruptcy No. 382–00974.

United States Bankruptcy Court, D. Oregon.

Oct. 20, 1982.

Angela M. Nolan, Portland, Or., for debtors.

Ronald Gould, Coos Bay, Or., for objecting creditor, Wolfkill Feed and Fertilizer.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

This matter came before the court on October 12, 1982 upon the debtor's request

for an expedited hearing on its application for authority to assume an executory contract. The court admitted Mr. Gould specially for the above-entitled case upon the motion of the debtor's attorney. Both parties submitted memoranda and supplemental memoranda to the court prior to the hearing.

The debtor alleges that a contract was entered into by the debtor and Wolfkill on March 30, 1982 and that pursuant to 11 U.S.C. § 365 the debtor is entitled to assume the contract. Wolfkill objects on the grounds that: (1) no valid and enforceable contract had been formed between the debtor and Wolfkill on March 30, 1982 or thereafter; (2) if a valid and enforceable contract had been formed, it was repudiated by the debtor's inadequate response to Wolfkill's request for adequate assurance of performance under UCC 2–609; and (3) the debtor's application was not presented within a reasonable time. At the time of the hearing, the parties submitted a stipulation declaring that the court's findings on the issues raised by Wolfkill's first two objections shall be final and binding on the parties.

■ The court finds that on March 30, 1982 Michael P. Ivory ("Ivory") of the debtor and Jerry Wolfkill of Wolfkill reached an oral agreement whereby the debtor agreed to sell and Wolfkill agreed to purchase 140,000 bushels of corn with a maximum content of 5% foreign matter at $3.35302 per bushel to be delivered to Stanwood, Washington from October 1 through November 30, 1982. On the next day, March 31, 1982, Ivory sent a written confirmation of this oral agreement to Wolfkill. The testimony at the hearing convinces the court that the debtor and Wolfkill had established a prior course of dealing during which they entered into many similar oral agreements which were later confirmed in writing and thereafter treated by both parties as valid and enforceable contracts. Therefore, the court concludes that the oral agreement of March 30, 1982 was likewise valid and enforceable.

Jerry Wolfkill signed the written confirmation of the agreement on April 5, 1982, but did not attempt to return it to the debtor until April 30, 1982 at an informal meeting of Ivory, Vincent Mast and himself. Ivory did not take the confirmation then, but suggested that Mr. Wolfkill mail it to his office instead. Mr. Wolfkill mailed it to the debtor on May 26, 1982.

At the April 30 meeting, Mr. Wolfkill first expressed his objections to the inclusion of the 5% foreign matter provision in the contract. Because of his objection, Mr. Wolfkill crossed out and initialed the 5% provision on the signed confirmation.

■ The court finds that this attempt to modify the oral agreement of March 30, 1982 was a unilateral act and thus ineffective. Mr. Wolfkill testified that the 5% provision had been previously agreed upon by the parties and that the written confirmation conformed in every respect to the earlier oral agreement. Upon receipt of the debtor's written confirmation of the agreement on March 31, 1982, Wolfkill had an obligation under the terms of the contract to make an immediate objection if any of the provisions set forth in the confirmation were incorrect. This obligation is specifically stated in the confirmation as follows:

"FAILURE TO ADVISE US IMMEDIATELY OF ANY DISCREPANCIES, OBJECTIONS, TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE CONSTRUED AS AN ACCEPTANCE OF THIS CONTRACT."

The obligation is also imposed by another provision in the contract which states that the rules of the Portland Merchant Exchange are to govern the contract. These rules incorporate the rules of the National Grain and Feed Association (NG & FA). *Portland Merchant Exchange Rule 1.* Rule 6 of the NF & GA provides that where a confirmation is sent by one party, that confirmation will be binding upon both parties in the case of any dispute unless objections are raised immediately.

Wolfkill failed to object to the form of the contract until April 30, 1982, one month after it had received the written confirma-

tion. Wolfkill's objection was neither prompt nor immediate. Therefore, under both the NF & GA rules incorporated by the rules of the Portland Merchant Exchange and under the terms of the confirmation itself, a valid and enforceable contract, containing the 5% foreign matter provision as well as all the other terms set forth in the confirmation of March 31, 1982, was formed.

On May 26, 1982 Wolfkill sent the written confirmation to the debtor together with a letter which it now claims is a demand for adequate assurance of performance pursuant to UCC 2–609. In the letter, Wolfkill states that it will consider the contract "cancelled" if the debtor does not respond within 14 days to Wolfkill's concern that U & I, Inc., the debtor's principal shipper, would not ship against its contract with the debtor. The letter goes on to reiterate Wolfkill's objection to the 5% foreign matter provision.

■ The court finds that there was no understanding between the contracting parties that the corn would come from a particular supplier of the debtor. Although U & I was the supplier usually chosen by the debtor in its transactions with Wolfkill, the debtor also did business with several other suppliers who could deliver according to the terms of the debtor's contract with Wolfkill. Wolfkill had no legal right to demand or expect that delivery be made by U & I only. Therefore, the fact that Wolfkill was unsure of performance by U & I was not sufficient to make it reasonably insecure as required by UCC 2–609.

If the May 26 letter were to be treated as a proper demand for adequate assurance of performance, the court finds that it can be read only as generally requesting assurance that the debtor would proceed with the contract. Nowhere in the letter does Wolfkill specifically state what action it expects the debtor to take other than to notify it within 14 days.

In its timely response to the letter on June 2, 1982, the debtor did assure Wolfkill that it intended to complete the contract. The debtor further stated that it would take legal action to compel U & I to ship if U & I refused to make delivery under its contract with the debtor.

Although there were other occasions after the June 2 response on which Wolfkill orally expressed concern over the debtor's ability to comply with the terms of the contract these expressions of concern did not rise to the level of an out and out repudiation of the contract. In addition, Wolfkill never informed the debtor that its June 2 response and its subsequent oral assurances of performance contract were inadequate. It was not until the debtor filed its application for authority to assume the contract on September 24, 1982 that Wolfkill finally expressly repudiated the contract.

■ Even if Wolfkill's May 26 letter and its subsequent expressions of concern were considered to be attempts at repudiation, such post petition attempts at cancellation would be in violation of the automatic stay provisions of 11 U.S.C. § 362 and the executory contract provisions of 11 U.S.C. § 365. See *Matter of Cargill v. Coast Trading Co.,* Case No. 382–00974, Adversary Proceeding 82–0295.

■ An executory contract of the debtor is property of the estate. Therefore, cancellation of such a contract is prohibited under § 362(a) of the Bankruptcy Code as an "act to obtain possession of property of the estate."

■ Section 365 of the Code permits a debtor to assume or reject executory contracts at any time until confirmation of the plan. No plan has been confirmed in this case to date. Thus, the time period of assuming or rejecting the contract had not yet expired when the debtor filed its application for authority to assume the contract. The debtor's filing of its application one week before performance was to commence under the contract was reasonable given the debtor's June 2 letter declaring its intent to affirm the contract and its many oral assurances of performance.

Under the circumstances of this case, the court concludes that Wolfkill had only two remedies available to it: (1) to seek relief from the automatic stay pursuant to 11 U.S.C. § 362 to permit it to terminate the contract; and/or (2) to request the court to fix a time within which the debtor would be required to accept or reject the contract pursuant to 11 U.S.C. § 365(d)(2). Having failed to exercise either remedy, any damage suffered by Wolfkill is the result of its own negligence or speculation.

The court further finds from the evidence presented that: (1) acceptance of the contract is advantageous to the debtor; and (2) the debtor will be able to perform its obligations under the contract.

It therefore appears that Wolfkill's objection to the debtor's application for authority to assume the contract must be overruled. An order will be entered herein approving the debtor's application.

This memorandum opinion shall constitute findings and conclusions under Bankruptcy Rule 752.