**LNS INVESTMENT COMPANY, INC., Plaintiff,**

v.

**PHILLIPS 66 COMPANY, Defendant.**

**Civ. A. No. 87–2215–O.**

United States District Court, D. Kansas.

Feb. 23, 1990.

Mark S. Gunnison, Steven J. Braun, McDowell, Rice & Smith, Chartered, Kansas City, Kan., for plaintiff.

Bill E. Fabian, Lawrence D. Greenbaum, McAnany, Van Cleave & Phillips, P.C., Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

### EARL E. O'CONNOR, Chief Judge.

The above-captioned matter was tried to the court on September 26–28, 1989. Having received and carefully considered the evidence adduced at that hearing, as well as the parties' supplemental briefing, the court now makes the following findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. Plaintiff is the successor to a company known as Compu–Blend Corporation ("CBC"), which blended, labeled, and packaged quart plastic bottles of motor oil for, among others, defendant Phillips 66 Company.

2. On July 29, 1986, W. Peter Buhlinger, defendant's Manager of Lubricants ("Buhlinger"), wrote a letter to Dan Tutcher, plaintiff's Vice–President of Operations ("Tutcher"), which read as follows:

This will confirm our verbal agreement wherein Phillips will purchase additional quantities of plastic bottles from CBC during 1986.

CBC, in an effort to increase their packaging capacity has committed to purchase several additional molds to blow the Phillips plastic one-quart container. In order to amortize the cost of the additional equipment Phillips has agreed to take delivery of a maximum of 4,000,000 bottles to be made available by December 31, 1986. This agreement includes the production available now and to be supplemented by the additional equipment. Should CBC not be able to produce the full 4,000,000 quarts by December 31, 1986, this agreement shall be considered satisfied.

Phillips' desire is to receive as many bottles packaged with Phillips motor oil in 1986 from CBC as possible. It is our intention to change to a different type of plastic one-quart container beginning in 1987 and therefore this agreement cannot extend past the December 31, 1986 deadline. All production would have to be of high resaleable [sic] plastic quarts filled with the appropriate Phillips products and labeled accordingly. The production would be required to be available on an even weekly basis in order to facilitate movement of the product to the warehouse and customers.

We trust that this additional volume will provide CBC extra flexibility in both blending and packaging motor oil for Phillips 66 Company.

Plaintiff's Exhibit 10.

3. Although the agreement memorialized in the July 29, 1986, letter ("July 29 agreement") called for plaintiff to increase its production capacity, plaintiff experienced numerous problems in maintaining even its pre-contract capacity. Moreover, the quality of goods plaintiff was able to deliver was frequently unacceptable to defendant. *See, e.g.,* Testimony of Jan Laughlin, Al Serviss; Defendant's Exhibits 412, 424, 425; Plaintiff's Exhibits 12, 14, 15.

4. On September 18, 1986, Jan L. Laughlin, defendant's Lubricant Supply Coordinator ("Laughlin"), wrote to Tutcher complaining of the quality of goods defendant was receiving from plaintiff, specifically mentioning neck finish and label application problems. The letter also noted that, if defendant had known that plaintiff's performance under the contract would be as actually tendered, defendant would probably not have committed to purchased plaintiff's hoped-for increased production. Plaintiff's Exhibit 12.

5. Leland Speer, Chairman of the Board of CBC ("Speer"), responded to the September 18, 1986, letter on September 29, 1986. Therein, he acknowledged certain deficiencies, but stated that, "we are certain that we will be showing marked improvement in deliveries in the coming week and even more in another two or three weeks." Speer offered a number of reasons for plaintiff's inability to perform as expected

**1486**

under the July 29 agreement. Plaintiff's Exhibit 14.

6. On September 30, 1986, Tutcher also responded to Laughlin's September 18, 1986, letter. Tutcher stated that plaintiff's difficulties in producing the quantity of goods contemplated by the contract were due to factors beyond its immediate control; moreover, he denied that the goods were not competitive with similar goods in the marketplace. Plaintiff's Exhibit 15.

7. Laughlin reiterated defendant's dissatisfaction with plaintiff's products by letter dated October 15, 1986. Discussing bottles tendered by plaintiff, Laughlin stated that, "we definitely do not want bottles on the shelf of the quality submitted." Plaintiff's Exhibit 16.

8. On December 16, 1986, Buhlinger wrote to Speer, stating that defendant would not renew any commitments to purchase goods from plaintiff after March 31, 1987, due to plaintiff's poor performance under the July 29 agreement. Plaintiff's Exhibit 25.

9. Plaintiff filed this suit on May 12, 1987, alleging, *inter alia*, that defendant breached the July 29 agreement by failing to purchase plaintiff's full output of plastic bottles through December 31, 1986.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the case at bar, pursuant to Title 28, United States Code, section 1332. Venue is proper in this district under Title 28, United States Code, section 1441(a).

2. Contracts for the sale of goods are governed by the Uniform Commercial Code, as adopted in Kansas, K.S.A. 84–1–101 *et seq.* ("the Code").

3. In this case, the relevant terms of the contract are found in the July 29 agreement alone, not, as plaintiff claims, in the July 29 agreement plus the parties' course of performance. Plaintiff correctly notes that the contract is for the sale of goods for the price of $500.00 or more, and thus subject to the statute of frauds contained in K.S.A. 84–2–201. Plaintiff is also correct that a term of the written contract may be modified or waived by the parties' course of performance under K.S.A. 84–2–208 and 84–2–209. Plaintiff is incorrect, however, that defendant waived the contractual requirement that plaintiff's production be on an "even weekly basis."

4. In Kansas, "Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right." *United Am. State Bank & Trust v. Wild W. Chrysler Plymouth, Inc.*, 221 Kan. 523, 526, 561 P.2d 792, 795 (1977). As one authority has explained, "What is involved is not the relinquishment of a right and the termination of the reciprocal duty but the excuse of the nonoccurrence or of a delay in the occurrence of a condition of a duty." E. Farnsworth, *Contracts* 561 (1982) (footnote omitted). "Modification," by contrast, is "A change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." *Black's Law Dictionary* 905 (5th ed. 1979).

5. The testimony adduced at trial demonstrated that defendant typically placed orders for goods with plaintiff after consultation with Martha LeTourneau, plaintiff's office manager. The purpose of this consultation, which occurred on a weekly or even daily basis, was to avoid the placement of orders plaintiff could not fill. Testimony of Jan Laughlin, Martha LeTourneau. This action is in no way inconsistent with the contractual requirement that plaintiff produce filled bottles on an even weekly basis. Thus, defendant cannot be said to have waived that requirement through its course of performance, under *United Am. State Bank & Trust, supra.* At most, therefore, the parties may have implicitly attempted to modify plaintiff's duty to deliver goods on an even weekly basis. However, because the original contract was subject to the statute of frauds, any modification was also subject thereto. K.S.A. 84–2–209(3). Because there is no evidence of a writing modifying

the July 29 agreement, plaintiff was bound to make available the contract quantity on an even weekly basis, after a reasonable amount of time in which to increase its capacity.

■ 6. Plaintiff's failure to provide either the quantity or quality of goods contemplated by the July 29 agreement entitled defendant to suspend its performance. Section 84–2–609 of the Code states as follows:

> **Right to adequate assurance of performance.** (1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.
>
> (2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.
>
> (3) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.
>
> (4) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

K.S.A. 84–2–609. To suspend its performance pursuant to this section, defendant must (1) have had reasonable grounds for insecurity regarding plaintiff's performance under the contract, (2) have demanded in writing adequate assurance of plaintiff's future performance and (3) have not received from plaintiff such assurance.

■ 7. Defendant had reasonable grounds for insecurity regarding plaintiff's performance. Plaintiff's Exhibits 12, 14, and 16, as well as the testimony at trial, conclusively demonstrated that plaintiff suffered numerous setbacks in its attempt to increase its capacity to produce plastic bottles for defendant. Specifically, both the quantity and quality of the bottles were chronically poor. Indeed, defendant was arguably entitled to cancel the contract soon after plaintiff's unacceptable performance began. K.S.A. 84–2–607(3)(a), 84–2–711(1). Although defendant lost its right to cancel the contract by failing to elect that remedy within a reasonable time, K.S.A. 84–2–612(3), the above circumstances were sufficient to establish defendant's right to adequate assurance of plaintiff's future performance under K.S.A. 84–2–609.

8. Defendant demanded, in writing, assurance from plaintiff regarding plaintiff's future performance. Under the Code, the writing requirement is to be liberally construed. *AMF v. McDonald's Corp.*, 536 F.2d 1167, 1170–71 (7th Cir.1976). In this case, defendant, through Jan Laughlin, notified plaintiff of the inadequacies of plaintiff's goods and requested assurance that plaintiff would take steps to rectify the same. *See* Plaintiff's Exhibits 12, 16. Testimony of Jan Laughlin, Martha LeTourneau. Thus, it was incumbent upon plaintiff to provide adequate assurance of its future performance to defendant.

■ 9. Plaintiff failed to provide defendant with adequate assurance of its future performance. Official UCC Comment 4 states that

> What constitutes "adequate" assurance of due performance is subject to the same test of factual conditions [as what constitutes "reasonable grounds for insecurity"]. For example, where the buyer can make use of a defective delivery, a mere promise by a seller of good repute that he is giving the matter his attention and that the defect will not be repeated, is normally sufficient. Under the same circumstances, however, a similar statement by a known corner-cutter might well be considered insufficient without the posting of a guaranty or, if so demanded by the buyer, a speedy replacement of the delivery involved. By the same token where a delivery has defects,

even though easily curable, which interfere with easy use by the buyer, no verbal assurance can be deemed adequate which is not accompanied by replacement, repair, money-allowance, or other commercially reasonable cure.

\*    \*    \*    \*    \*    \*

The entire foregoing discussion as to adequacy of assurance by way of explanation is subject to qualification when repeated occasions for the application of this section arise. This Act recognizes that repeated delinquencies must be viewed as cumulative.

K.S.A. 84–2–609, Official UCC Comment 4. Plaintiff's continual excuses for failing to perform, unaccompanied by corresponding remedial action, cannot be deemed adequate assurance under the Code. Accordingly, defendant was entitled to suspend its own performance of the contract by refusing to place orders with plaintiff and/or cancelling unfilled orders already placed, thirty days after either or both the September 18, 1986, and October 15, 1986, letters. In view of this conclusion, defendant did not breach the contract by suspending performance in December, 1986, and judgment will be entered in its favor.

Also pending are plaintiff's motions to strike defendant's designation of Leland Speer's deposition and defendant's references thereto. Because the court has not relied upon said deposition in making the foregoing findings of fact and conclusions of law, plaintiff's motions are moot and will be denied.

IT IS THEREFORE ORDERED that judgment be entered in favor of defendant on plaintiff's breach of contract claim.

IT IS FURTHER ORDERED that plaintiff's motions to strike are denied.