**BY–LO OIL CO., INC., Plaintiff–Appellant,**

v.

**PARTECH, INC., Defendant–Appellee.**

No. 00–1148.

United States Court of Appeals, Sixth Circuit.

May 30, 2001.

Before KENNEDY and DAUGHTREY; Circuit Judges, and McKEAGUE; District Judge.*

KENNEDY, Circuit Judge.

Plaintiff, By–Lo Oil Company, appeals the district court's grant of summary judgment to defendant, ParTech, Incorporated, in this diversity contract dispute. On appeal. By–Lo makes two claims. First, it argues the district court failed to address whether the modification provision of the contract between the parties—stating that ParTech would modify the software By–Lo purchased at By–Lo's request—obligated ParTech to make the software year 2000(Y2K) compliant. Second, it argues in analyzing the issue of whether the continuing support provision of the contract required ParTech to update the software, the district court improperly decided a factual question in determining that under Michigan's Uniform Commercial Code section 2–609. ParTech had provided By–Lo with adequate assurance that ParTech would perform under the contract.[1]

We find no merit in either argument. While it appears the district court's opinion did not include an analysis of whether ParTech fulfilled its obligations under the modification provision, we need not remand the issue because it is clear that By–Lo's correspondence with ParTech cannot be viewed as a request for modification necessary to require ParTech to act under that provision. As to the continuing support provision, while questions of whether a party provided "adequate assurance" and whether the other party had "reasonable grounds for insecurity" to ask for that assurance are generally fact questions left to the jury, we hold that as a matter of law, no reasonable jury could find that ParTech's assurance was inadequate nor could it find that By–Lo had reasonable grounds for insecurity to ask for that as-

---

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

1. By–Lo also asserted breach of warranty claims before the district court but has not raised those claims on appeal.

surance. Accordingly, we affirm the district court's judgment.

We begin with a brief factual background before moving to our analysis.

## I.

ParTech's predecessor in interest entered into an agreement with By–Lo to sell it various computer software programs—ProfiMax and PetroMax—and to service those programs. The software acted as (1) a diesel fuel and gas management system, (2) a convenience store management system, and (3) an accounting system. *See* Appellee's Br. at 2. Schedule F to this agreement provides that "By–Lo Oil Company will receive perpetual license to use the software as specified in Schedule A. [ParTech] agrees to grant such license at no additional cost to By–Lo Oil Company. [ParTech] will thereafter modify the software upon request of By–Lo Oil Company, at its then existing normal charge for software modification." J.A. at 33 [hereinafter the modification provision]. Schedule D to the agreement also stated that ParTech would provide continuing support to By–Lo for a fixed monthly fee. *See* J.A. at 30 [hereinafter the continuing support provision]. For purposes of the motion for summary judgment, the parties and the district court assumed that the contract—specifically Schedule D's continuing support provision—required ParTech to make By–Lo's software Y2K compliant. The opinion does not indicate that the parties reached the same agreement with respect to the modification provision.

In September of 1997, By–Lo's Controller, Thomas Masters, wrote "Terry" at ParTech to inquire about "software and hardware options with [ParTech's] software and the concern of reaching the year 2000." J.A. at 37. The letter requested that Mary Beth Eng, director of ParTech's Host Accounting Systems, contact Mr. Masters to discuss the matter. Ms. Eng

did not respond. Masters wrote again, this time to Ms. Eng, on January 7, 1998. He demanded "a written response from [Ms. Eng] by January 31, 1998 of Par[Tech]'s commitment that the software [By–Lo] own[s] will function after *December 31, 1999* with no problems." J.A. at 38 (emphasis added). This was ParTech's obligation, his letter indicated, under the continuing support provision of the agreement: "We pay you each month a maintenance fee of $625.00 with the expectation of the continued function of the software beyond December 31, 1999." J.A. at 38. Masters also threatened a lawsuit if he did not receive such response, warning that By–Lo would replace the software with that of another company and would seek the replacement cost from ParTech. According to his affidavit, Mr. Masters was concerned not only about the December 31, 1999 date but also April 1, 1999 because that date was the beginning of By–Lo's fiscal year. Accordingly, some data would need to be entered using four digit dates after that time. The letter, however, made no mention of By–Lo's fiscal year starting on April 1, 1999 nor Masters's concern that the software needed to be compliant by that date. According to Ms. Eng's affidavit, had Mr. Masters mentioned this concern, she would have informed him that By–Lo's "fiscal year was irrelevant. The only component of the ProfiMax and PetroMax systems that processed fiscal year information was the general ledger, which had been modified in June 1990 to accept four digit year data, and was, therefore, already Year 2000 ready." J.A. at 81.

Ms. Eng responded by letter on January 30, 1998. She stated she could give Masters no answer to the question of "whether ... the software would be changed by Par[Tech] to handle year 2000" because the "decision will be made by upper level management within Par[Tech] once they

have the appropriate data to make an informed decision." She assured him that "[o]nce the decision [was] made, [he would] be notified." J.A. at 39.

According to Masters, he made another attempt to secure more definitive assurances by traveling to ParTech's Arlington, Texas headquarters where he was again told he would be informed when a decision was made. Unsatisfied with these responses, By–Lo, on May 1, 1998, filed a lawsuit against a Partech company located in New York. It obtained a default judgment in the suit. It later realized that that was not the ParTech with which it had an agreement, which ParTech is a foreign corporation. In June of 1998, concerned about the looming Y2K problem, By–Lo purchased a new computer system—both software and hardware—for over $175,000.00. At oral argument, By–Lo explained that the software needed a different hardware system to run.

Unaware of these events, ParTech, on November 20, 1998, gave By–Lo the definitive answer for which it had been looking. ParTech's letter stated ParTech would supply the needed software at no cost and that the software needed to be installed prior to January 1, 1999, because the programs run on a "date check plus one" system by which a year is added to certain dates the user enters. *See* Appellant's Br. at 7. (By–Lo, however, was unaware of the "date check plus one" system when it initiated its lawsuit and changed computer equipment.) On December 18, 1998, ParTech, as promised, sent By–Lo the necessary software with detailed instructions for loading it. Of course, because By–Lo was now operating on a different system, it did not install the software.

Meanwhile, By–Lo, having realized its mistake in filing its May 1998 lawsuit against the wrong ParTech, refiled in May of 1999 in Michigan state court against the correct ParTech. The complaint alleged

(1) breach of contract, (2) breach of warranties, (3) violation of the Michigan Consumer Protection Act, and (4) product liability. ParTech removed the suit to the District Court for the Eastern District of Michigan on diversity and all but the breach of contract and warranty claims were dropped. As to the breach of contract claim, By–Lo argued it had a right to obtain new computer equipment because of ParTech's actions, which it characterized as an anticipatory breach under Michigan's UCC sections 2–609 and 2–610. The complaint also alleged ParTech breached the modification provision of the contract. *See* J.A. at 16–17. In response, ParTech moved for summary judgment on the grounds that (1) it had not made an overt communication of intent to repudiate the contract and therefore there was not a breach under 2–610; and (2) By–Lo did not have the reasonable grounds for insecurity necessary to seek assurance and the assurance ParTech gave was adequate and therefore there was no basis to find a breach under 2–609. The district court agreed and granted ParTech's motion.

This appeal followed.

## II.

This court reviews a district court's grant of summary judgment de novo. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832 (6th Cir.1999). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, we draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106

S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nevertheless, to prevail, the party opposing the motion must bring forth evidence to create a genuine issue of material fact. A mere "scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "while the judge's function is not himself to weigh the evidence and determine the truth of the matter," he must ask himself "whether a fair-minded jury could return a verdict for the [non-moving] party on the evidence presented." *Id.* at 250, 252, 106 S.Ct. 2505.

On appeal, By–Lo argues the district court did exactly what *Liberty Lobby* said a district court must not do—weigh evidence—by deciding the assurance ParTech provided was adequate. More fundamentally, By–Lo continues, the district court erred by failing to even address one of its claims for breach of contract—that ParTech had an obligation under the modification provision to make the software Y2K complaint. Had it, By–Lo concludes, the district court would have allowed the case to go to trial.

### A.

■ According to By–Lo, "Nowhere in its Opinion ... did the district court recognize that ParTech had [an obligation under the modification provision to make the software Y2K complaint]. Rather, the district court viewed the claim solely as though it were one for damages for anticipatory repudiation." Appellant's Br. at 16. This characterization of the district court's opinion appears correct. The district court cites to language in Schedule D—the

schedule which contained the continuing support provision—as the basis of Par-Tech's obligation to make the software Y2K compliant. The opinion does not include a separate analysis of the modification provision.[2]

This omission, however, does not require a remand. By–Lo's argument that Par-Tech had a separate obligation under the modification provision has no merit. Under the modification provision of Schedule F, By–Lo had to request that the software be modified. "[ParTech] will thereafter modify the software *upon the request of By–Lo Oil Company,* at its then existing normal charge for software modification." J.A. at 33 (emphasis added). No such request needed to be made under the continuing support provision nor was By–Lo required to pay a separate modification charge—the service was covered under the monthly maintenance fee By–Lo paid. "If Customer selects this service, [ParTech] will provide the following services for the specified price:.... 4. Periodic Program material updates.... 6. Customer shall pay for such service in advance at the rate of $ 360.00[ ] per month for the first year and thereafter at [ParTech's] then applicable rate." J.A. at 30. By–Lo's correspondence with ParTech—at least the correspondence before us, the January 7, 1998 letter—clearly indicates that By–Lo believed ParTech was obligated to make the software Y2K compliant under the continuing support provision. "We pay you each month a maintenance fee of $625.00 with the expectation of the continued function of the software beyond December 31, 1999." J.A. at 38. Hence, the letter did not request and cannot be seen as a request for modification under Schedule F of the agreement. Rather, it is a request for

---

**2.** In the district court's defense, By–Lo's brief in opposition to summary judgment is less than clear in explaining that it sees the obli-gations under the modification and continuing support provisions as different.

assurance from ParTech that it will fulfill its obligations under the continuing support provision. As no request for modification had been made. ParTech was under no obligation to modify the software under Schedule F. Accordingly, the judgment cannot be reversed on that basis.

### B.

We also find without merit By–Lo's argument that the district court improperly decided questions of fact in analyzing the anticipatory repudiation claim.[3] In reaching its conclusion, the district court assumed for the sake of argument that there were reasonable grounds for By–Lo's insecurity and held that ParTech's assurance—given almost two years before what By–Lo had indicated was the date it was concerned about—that it was looking into the matter was adequate assurance under the UCC. Accordingly, it concluded, By–Lo did not have the right to purchase equipment from another company in June of 1998 nor did it have the right to instigate a lawsuit in May of 1998. In passing, By–Lo argues it had reasonable grounds for insecurity because of the impending deadline coupled with the failure of ParTech to respond to its September 7, 1997 letter and several phone calls. *See* Appellant's Br. at 22.

■ Under Michigan's UCC,
(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When *reasonable grounds for insecurity* arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.
(2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined by commercial standards.
    . . . .
(4) After receipt of a justified demand failure to provide within a reasonable time not exceeding 30 days such *assurance of due performance as is adequate* under the circumstances of the particular case is a repudiation of the contract.

Mich. Comp. Laws Ann. § 440.2609 (emphasis added). As a general matter what constitutes reasonable grounds for insecurity under subsection (1) and adequate assurance under subsections (1) and (4) are factual questions left to the trier of fact. *See id.* cmt. 4; *see also* 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 6–2 (4th ed. 2000) ("[T]he trier of fact must normally answer whether grounds for insecurity exist."); Larry T. Garvin, *Adequate Assurance of Performance: Of Risk, Duress, and Cognition,* 69 U. COLO. L.REV. 71, 102 (1998). As indicated, this is the general rule; there are exceptions. *See BAII Banking Corp. v. UPG, Inc.,* 985 F.2d 685, 702 (2nd Cir. 1993). And indeed, By–Lo does not argue that district courts possess no power to make such determinations as a matter of law; it argues this is just not one of those cases. We disagree. We believe that, as a matter of law, By–Lo did not have reasonable grounds for insecurity and that the court was correct to rule as a matter of law that ParTech's assurance was adequate.

### 1. Reasonable Grounds

As general guidance, the comments to the section indicate that the grounds need

---

**3.** The parties have agreed that their contract, and consequently, this case, is controlled by the UCC. They also agree, correctly, that the law of Michigan governs this case.

not be the actions or inactions of a contracting party—outside circumstances may be sufficient. The question to be answered is whether a reasonable merchant in By–Lo's position would "feel that his expectation of receiving full performance was threatened." 2 HAWKLAND UNIFORM COMMERCIAL CODE SERIES § 2–609:2 (2000). The grounds that give rise to this feeling have to be something that occurred after the contract was in place. *See id.*

In essence By–Lo's argument that it had reasonable grounds for insecurity is based on the contention that ParTech was due to perform (in two years) and if ParTech failed to perform, it would be costly to By–Lo. Of course, this is generally the case in any contract. Hence, it is clear that the mere fact that performance was to come due is not sufficient under 2–609. *See Cole v. Melvin,* 441 F.Supp. 193, 202 (D.S.D. 1977) ("Clearly, the drafters of the code did not intend that one party to a contract can go about demanding security for the performance of the other whenever he gets nervous about a contract. Some reason for the demand for assurance must precede the demand."); *SPS Industries, Inc. v. Atlantic Steel Co.,* 186 Ga.App. 94, 366 S.E.2d 410 (1988). Although the Y2K problem was not widely recognized prior to the contract, it is not entirely clear that that fact allows it to function as the incident that would create reasonable insecurity. The provision for continuing support contemplates that without such support the software may not function as well or at all. If this is considered in conjunction with the alleged failure of ParTech to return calls, it might have given rise to reasonable grounds for insecurity at some point before Y2K. *See Erwin Weller Co. v. Talon, Inc.,* 295 N.W.2d 172 (S.D.1980) (finding that growing amount of credit extended by the seller to the buyer coupled with the buyer's failure to return the seller's calls to discuss the situation constituted reasonable grounds for insecurity).

The question still remains whether January 7, 1998 was that time. By–Lo offers little reason to conclude that a date nearly two years prior to the date performance was necessary would be a time at which one would reasonably feel insecure. Michigan courts have not addressed the question so we must look to cases from other jurisdictions. In analyzing the question, we look to (1) whether time was running short for By–Lo to make alternative arrangements, *see In re Coast Trading Co.,* 26 B.R. 737, 740 (Bankr.D.Or.1982); (2) whether it would take By–Lo nearly that amount of time to install any modifications or updates sent by ParTech; (3) whether ParTech had proved unreliable in the past, *see T & S Brass & Bronze Works, Inc. v. Pic–Air, Inc.,* 790 F.2d 1098, 1105 (4th Cir.1986); and (4) whether By–Lo had reason to believe that ParTech would be unable to perform, *see LNS Inv. Co. v. Phillips 66 Co.,* 731 F.Supp. 1484 (D.Kan.1990). Looking at these factors, it is clear that as of January 7, 1998, By–Lo had no reasonable grounds to feel insecure. By–Lo does not complain about ParTech's previous service nor is there any indication that it was in time pinch to obtain a new system if ParTech did not respond quickly. There is no indication that By–Lo had reason to believe it would take a lengthy period of time to make any corrections ParTech required. By–Lo attempts to characterize the affidavit of Ronda Ryan, a computer programmer and software developer, as evidence that as of May 1998, it had little time to obtain new software and implement it or to install any software sent by ParTech:

> By May 1998, timing became an issue for By–Lo, which perceived that it had a Hobson's choice: purchase a new computer system to ensure installation and readiness when the year 2000 dates would be utilized ..., or roll the dice and wait to see [whether] Partech would

decide to honor its contractual obligations.... Because By–Lo had no in-house information systems department, it would have to contract with a third party to do the installation ... but, by this time, due to the substantial demand for computer upgrades to handle the year 2000 dates, the supply of qualified computer systems personnel was becoming scarce.

Appellant's Br. at 7–8 (citing Ms. Ryan's affidavit). Of course, May of 1998 is of no consequence in evaluating whether By–Lo had reasonable grounds for insecurity in January of 1998 when it asked ParTech for assurance. Moreover, Ms. Ryan's affidavit does not say what By–Lo claims it says. The "this time" referred to in the above passage appears to be May of 1998. The language from By–Lo's brief almost mirrors a passage from Ms. Ryan's affidavit. However, that passage does not refer to May or June of 1998, but rather to December of 1998. In her affidavit, she states,

It is my professional opinion that *13 days over the December holiday* is not adequate time to install and test a software upgrade to mission critical computer applications given the tremendous demand for computer consultants caused by the Year 2000 bug. By–Lo, which does not have an in-house information systems department, would have found it very difficult to retain a computer consultant to install and test the software upgrade and to ensure that it was compatible with other aspects of the computer system *during that 13–day period in December 1998.*

J.A. 171 (emphasis added). Finally, the only thing that could be seen as an indication that ParTech would be unable to perform was ParTech's initial delay in responding. In sum, there was little reason for By–Lo to be concerned at such an early date—so little that no reasonable jury could have found for By–Lo.

### 2. Adequate Assurance

The same is true as to the adequate assurance issue. The question to be answered is "what are the minimum kinds of promises or acts on the part of the promisor that would satisfy a reasonable merchant in the position of the promisee that his expectation of receiving due performance will be fulfilled?" 2 HAWKLAND UNIFORM COMMERCIAL CODE SERIES § 2–609:03. Generally, when a promisor's assurance is something less than what was sought, courts find the assurance inadequate. *See* Garvin, *supra* at 105. Again, that is generally the case. In evaluating the assurance, the court should keep in mind the reputation of the promisor, the grounds for insecurity, and the kinds of assurance available. *See id.; see also* Mich. Comp. Laws Ann. § 440.2609 cmt. 4.

With those factors in mind, we conclude the district court was correct to hold that as a matter of law, ParTech's assurance that it was evaluating the matter was adequate despite the fact that it was less than requested. As noted, By–Lo did not have reasonable grounds for insecurity in January of 1998. The Y2K problem was almost two years away. There is absolutely no indication that ParTech had failed to fulfill its obligations in the past nor is there any evidence that ParTech's reputation should have given By–Lo cause for concern. And, moreover, it is not clear what else ParTech could have done.

### III.

For the foregoing reasons, we affirm the district court's judgment.